**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEXANDER GRAHAM-SULT; DAVID GRAHAM, <br><br> *Plaintiffs-Appellants*, <br><br> v. <br><br> NICHOLAS P. CLAINOS; RICHARD L. GREENE; LINDA MCCALL; GREENE RADOVSKY MALONEY SHARE & HENNIGH LLP, a limited liability partnership; BILL GRAHAM ARCHIVES LLC, DBA Wolfgang's Vault; NORTON LLC, a limited liability company; WILLIAM E. SAGAN, <br><br> *Defendants-Appellees*. | No. 11-16779 <br><br> D.C. No. 4:10-cv-04877-CW |

ALEXANDER GRAHAM-SULT; DAVID GRAHAM,

*Plaintiffs-Appellants*,

v.

NICHOLAS P. CLAINOS; RICHARD L. GREENE; LINDA MCCALL; GREENE RADOVSKY MALONEY SHARE & HENNIGH LLP, a limited liability partnership; BILL GRAHAM ARCHIVES LLC, DBA Wolfgang's Vault; NORTON LLC, a limited liability company; WILLIAM E. SAGAN,

*Defendants-Appellees*.

No. 12-15892

D.C. No. 4:10-cv-04877-CW

ORDER AND AMENDED OPINION

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, Chief District Judge, Presiding

Argued and Submitted
April 18, 2013—San Francisco, California

Filed December 27, 2013
Amended February 5, 2014

Before: Alfred T. Goodwin, Diarmuid F. O'Scannlain,
and N. Randy Smith, Circuit Judges.

Order;
Opinion by Judge N.R. Smith

# SUMMARY[*]

## Anti-SLAPP Statute / California Law

The panel affirmed in part and reversed in part the district court's judgment in an action brought by the sons of the late concert promoter Bill Graham, alleging that they were entitled to pro rata distributions of certain property owned by Graham's estate.

The panel reversed in part the district court's disposition of a special motion to strike under California's anti-SLAPP statute, holding that the district court erred in dismissing the plaintiffs' claims for conversion, unjust enrichment, and breach of fiduciary duty against Nicholas Clainos, the executor of Graham's estate.

The panel held that plaintiffs sufficiently alleged claims for conversion, copyright infringement, and declaratory relief against William Sagan, Norton LLC and Bill Graham Archives, LLC ("BGA Defendants"), and that the district court therefore erred in dismissing these claims.

Concerning the underlying awards of attorneys' fees, the panel vacated the post-motion-to-strike fee award to Clainos, as well as the post-motion-to-dismiss fee award of the BGA Defendants.

The panel affirmed the district court's decision in all other respects.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

James J. Brosnahan (argued) and Kevin A. Calia, Morrison & Foerster, San Francisco, California; Therese Y. Cannata, Carolyn A. Johnston and Rachel L. Kent, Cannata, Ching & O'Toole, San Francisco, California, for Plaintiffs-Appellants.

Nancy L. Tompkins (argued), James M. Wagstaffe and Ivo Labar, Kerr & Wagstaffe, San Francisco, California, for Defendant-Appellee Nicholas P. Clainos.

Jerome B. Falk, Jr. (argued) and Jonathan W. Hughes, Arnold & Porter, San Francisco, California; Ronald E. Mallen and Cassidy E. Chivers, Hinshaw & Culbertson, San Francisco, California, for Defendants-Appellees Richard L. Greene, Linda McCall, and Greene Radovsky Maloney Share & Hennigh LLP.

Thomas Patrick Lane (argued) and Michael S. Elkin, Winston & Strawn, New York, New York; Erin R. Ranahan and Drew A. Robertson, Winston & Strawn, Los Angeles, California, for Defendants-Appellees Bill Graham Archives LLC DBA Wolfgang's Vault, Norton LLC, and William Sagan.

---

**ORDER**

The Opinion filed December 27, 2013, appearing at 738 F.3d 1131, is amended as follows:

> 1. At slip op. 45, delete ", and Clainos and the Greene Defendants challenge the amounts awarded"

2.  At slip op. 45, delete "Both Clainos and the Greene Defendants appealed their reduced fee awards."

With these amendments, the panel has voted unanimously to deny the petition for panel rehearing. The petition for rehearing is **DENIED**.

No further petitions for rehearing or rehearing en banc may be filed in response to the amended opinion.

---

**OPINION**

N.R. SMITH, Circuit Judge:

Plaintiffs Alexander Graham-Sult and David Graham appeal the district court's disposition of: (1) a motion to dismiss; (2) a special motion to strike under California's anti-SLAPP statute; and (3) related attorney's fees awards.

We affirm the disposition of the motion to strike in part and reverse in part. Striking Plaintiffs' conversion and unjust enrichment claims against Nicholas Clainos was erroneous, because: (a) taking possession of personal property, (b) preparing and executing an assignment of intellectual property following a probate court's final order, and (c) receiving consideration for stock sold after a probate court entered its final order, are not protected activities.

Striking Plaintiffs' breach of fiduciary duty claim against Clainos was also erroneous. Even though the conduct underlying this claim was protected activity, nothing in this

record suggests Plaintiffs will not be successful on the merits when pursuing Clainos's alleged (a) self-dealing, (b) failure to exercise due care in handling probate estate assets, and (c) secret transfer of intellectual property to an entity defendant purchased.

We then turn to the district court's disposition of a motion to dismiss certain claims against William Sagan, Norton LLC, and Bill Graham Archives, LLC (collectively, the "BGA Defendants"). We conclude that Plaintiffs sufficiently alleged claims for conversion, copyright infringement, and declaratory relief against the BGA Defendants, and that dismissing those claims was erroneous.

Consistent with these conclusions, we consider the underlying awards of attorney's fees. We vacate the post-motion-to-strike fee award to Clainos, as well as the post-motion-to-dismiss fee award to the BGA Defendants.

In all other respects, the district court's decision is affirmed.

## FACTS & PROCEDURAL HISTORY

### I.  Background

The late Bill Graham ("Graham") successfully promoted rock and roll concerts in the San Francisco Bay Area and internationally. Graham died testate in 1991 when the helicopter (in which he was riding) crashed into a utility tower. Graham's will created individual trusts for his sons, Alexander Graham-Sult ("Alex") and David Graham ("David"), who were 14 and 23 years old respectively at the time of Graham's death. The will appointed Graham's friend

and business partner, Nicholas Clainos, as the trustee of those trusts and the executor of the estate.[1] Richard Greene, through his law firm, provided Clainos legal counsel in his capacity as both executor of the estate and trustee of the trusts.

## II. Procedural History

Graham's substantial estate was in probate for several years, but, on August 8, 1995, the probate court entered its final order of distribution. On October 27, 2010, Alex and David filed the instant lawsuit against: (1) Clainos; (2) the BGA Defendants; and (3) Greene and related individuals and entities, including Greene Radovsky Maloney Share & Hennigh LLP (Greene's law firm), and Linda McCall (another attorney with Greene's firm) (collectively, the "Greene Defendants").

Plaintiffs claim that at the time of Graham's death, his estate owned: (1) intellectual property (copyrights to posters registered in Bill Graham's name and the trademark for the name "The Fillmore"), (2) ten "scrapbooks" containing posters, and (3) 100 complete series of original posters.[2] Plaintiffs claim they were entitled to pro rata distributions of this property, and brought twelve causes of action, including claims for fraud, concealment, breach of fiduciary duty, conversion, and unjust enrichment.

---

[1] The will also appointed Harold Furst as co-executor, but he apparently "declined to act."

[2] In their complaint, Plaintiffs inconsistently refer to these assets collectively as the "Archives." Plaintiffs also make different allegations with respect to each of these categories of assets. For clarity, we refer to each category of assets individually, rather than collectively.

## III.    The Property at Issue

At the time of his death, Graham owned all the shares of Bill Graham Enterprises, Inc. ("BGE"). Therefore, these shares became assets of the estate.

Graham also had registered the copyrights to many posters used by BGE and the trademark "The Fillmore" (collectively, the "intellectual property") in his own name. Therefore, in the course of Greene's work on the Graham estate, he investigated whether this intellectual property belonged to the estate or to BGE. During the investigation, on December 9, 1991, Greene met with one of BGE's key employees, Steve Welkom, and one of BGE's Vice Presidents, Jerry Pompili. At this meeting, Greene learned that "(1) Pompili had filed copyrights for most posters and the Fillmore trademark in the name of William Graham, (2) BGE paid for all application and registration fees, [and] (3) BGE received all revenues from the sales and licensing of the intellectual property." Based on these facts, Greene formed "the legal opinion that BGE owned the intellectual property registered in the name of William Graham."

### A.  Sale of BGE

In 1992, when Clainos began negotiating the sale of BGE on behalf of the Graham estate, BGE's key employees threatened to leave if they were not given the opportunity to purchase the company. According to Clainos, losing the key employees would cause BGE's value to drop significantly. With the probate court's encouragement, Clainos structured a sale to the key employees. In 1993, when Clainos filed a Petition for Confirmation of Sale, two beneficiaries objected to the sale. Consequently, Clainos petitioned the court to

distribute the BGE shares to the Graham estate beneficiaries. On January 25, 1994, the probate court granted this petition.

After this distribution of shares, the beneficiaries sold their shares in BGE to the key employees. To consummate the transaction, a new entity, Bill Graham Presents, Inc. ("BGP"), was formed; BGP then acquired all of the BGE shares from the beneficiaries. As part of the transaction, Plaintiffs also obtained a right of first refusal to the "Archives"[3] BGE held. Accordingly, if BGE or the Archives were ever sold, Plaintiffs retained the right to purchase them. (Because this transaction occurred after the shares had been distributed from the estate, the probate court did not approve the terms of the sale.) After the sale, Clainos held a thirteen percent (13%) stake in BGP, Alex and David each held a ten percent (10%) stake, and the key employees held the remaining shares.

## B. Preparation of the Assignment of Intellectual Property

On August 31, 1995, three weeks after the probate court had entered its final order, an attorney representing BGE wrote to Greene to ask if Greene "[c]ould please clarify. . . how the transfer / assignment of copyrights and trademarks was handled in the sale of [BGE] to the key employees?" After receiving the letter, Greene's firm prepared an Assignment, with the stated purpose of "confirm[ing] BGE's

---

[3] The agreement containing the right of first refusal defined the Archives as "[A]ll posters, handbills, tickets, photographs, slides, videos, audiotapes and other archival material produced or obtained prior to October 25, 1991 in connection with the activities of any of the BGP Companies prior to October 25, 1991."

ownership of [the intellectual property]." The Assignment provided in pertinent part that "Assignor hereby assigns, transfers and conveys to BGE ('Assignee') any and all right, title and interest of the Decedent in any and all copyrights, tradenames, trademarks and servicemarks claimed by or registered in the name of the Decedent." The Assignment was backdated to August 1, 1995—seven days before the probate court entered its final order of distribution.[4] Clainos executed this Assignment in his capacity as executor of Graham's estate and sent it to BGE on September 1, 1995. On July 29, 1996, BGE recorded the Assignment in the United States Copyright Office.

## C. Transfers to the BGA Defendants

The BGA Defendants came to own part of the disputed property through a sequence of transactions following the close of the Graham estate. In 1997, SFX Entertainment, Inc. ("SFX") acquired BGP.[5] Plaintiffs were represented by attorney Philip Feldman ("Feldman") during this sale. Prior to closing this transaction, Greene sent Feldman a copy of Section 3.18 of the sales agreement, which addressed the sale of intellectual property. The parties do not dispute that Feldman received this letter.

---

[4] The Assignment provides that it was "executed as of August 1, 1995, by NICHOLAS P. CLAINOS, as Executor of the Will of William Graham," but it is clear that the Assignment was not signed on that date. On the Assignment's second page, the Notary Public's certification states that Clainos signed the document on August 31, 1995.

[5] The sale activated Plaintiffs' right of first refusal to purchase the archives, but they declined to exercise it. Instead, they received $6,785.720 each for their shares in BGP.

Section 3.18 provided that "Schedule 3.18 attached hereto contains, to each Selling Shareholder's Knowledge, a true and complete list of all . . . trademarks . . . copyrights . . . owned or used by [BGP] or material to the conduct of [BGP]'s business." Schedule 3.18, in turn, included a copy of the Assignment and the Copyright office registration. Although Section 3.18 incorporated Schedule 3.18 by reference, Greene did not attach a copy of Schedule 3.18 or the Assignment to the letter he sent Feldman.

Clear Channel Communications then bought SFX. Clear Channel transferred most of the archives (except for a few unspecified items and the "Fillmore" trademark) to Bill Graham Archives LLC. In 2002, defendant Norton, LLC (owned and controlled by defendant Sagan) purchased BGA from Clear Channel. Allegedly, Clainos, as a paid consultant to BGA, "conducted significant research and interviews concerning the Archives, tracing the history and confirming what Sagan was actually purchasing."

### D. Plaintiffs' Investigation and Subsequent Actions

In late 2008, Plaintiffs discovered fifty boxes of documents at BGE's former headquarters. When Plaintiffs reviewed those documents in February 2009, they discovered the Assignment. Suspicious, David and Alex proceeded to investigate the extent of their father's intellectual property registrations. Their research led them to the United States Copyright Office, where they discovered that Graham had "over 300 poster copyrights" registered in his name at the time of his death. Through further research, they discovered that the trademark for "The Fillmore" had also been registered to their father.

In January 2010, nearly one year later, David and Alex discovered that Sagan and / or BGA had possession of ten of Graham's allegedly personal scrapbooks. That same year, they brought the instant lawsuit.

## DISCUSSION

## I.  Anti-SLAPP

California's anti-SLAPP statute authorizes defendants to file a "special motion to strike" any "*cause of action* against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution . . . in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1) (emphasis added). Acts in furtherance of the right of petition include "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." *Id.* § 425.16(e)(2). An anti-SLAPP motion is available to defendants in federal court. *See Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (per curiam).

We review the district court's grant of a special motion to strike de novo. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003). We conduct this review in two steps. Preliminarily, we ask whether the defendant showed that the plaintiff's causes of action "arise[] from an act in furtherance of the defendant's rights of petition or free speech." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (internal quotation marks omitted); *see Hylton v. Frank E. Rogozienski, Inc.*, 99 Cal. Rptr. 3d 805, 809 (Ct. App. 2009). If the defendant makes that showing, then we ask whether the plaintiff can show that it has "a reasonable probability of prevailing in its claims for those

claims to survive dismissal." *Mindys*, 611 F.3d at 598 (internal quotation marks omitted). We address each prong in turn.

## A.  Arising from Protected Activity

The district court concluded that all of Plaintiffs' claims against Clainos and the Greene Defendants arise from protected activity, because the "gravamen" of all causes of action involved Clainos's performance of his duties as the executor of Graham's estate. We disagree with the district court's characterization of Plaintiffs' complaint. Close scrutiny demonstrates that Plaintiffs' causes of action arise from different types of conduct, requiring a more-particularized analysis under the anti-SLAPP statute.

For purposes of the anti-SLAPP statute, a cause of action "arises from" conduct that it is "based on." *Copenbarger v. Morris Cerullo World Evangelism*, 156 Cal. Rptr. 3d 70, 74–75 (Ct. App. 2013). Thus, we first ask what activities form the basis for each of Plaintiffs' causes of action. We then ask whether those activities are "protected," bringing the cause of action within the scope of the anti-SLAPP statute. *See Wallace v. McCubbin*, 128 Cal. Rptr. 3d 205, 218 (Ct. App. 2011). "Where a cause of action is based on both protected activity and unprotected activity, it is subject to [the anti-SLAPP statute] unless the protected conduct is *merely incidental* to the unprotected conduct." *Id.* (emphasis added) (internal quotation marks omitted). Protected activity is not "merely incidental" to unprotected activity if the alleged activity "underl[ies] the cause of action." *Salma v. Capon*, 74 Cal. Rptr. 3d 873, 884 (Ct. App. 2008).

Reviewing Plaintiffs' complaint under this standard, we conclude that only six of Plaintiffs' causes of action arise from protected activity. Because the remaining causes of action do not arise from protected activity, they were not properly subject to the special motion to strike.

### 1. First and Second Causes of Action: Breach of Fiduciary Duty vs. Clainos, and Aiding and Abetting Breach vs. the Greene Defendants

Four general categories of Clainos's activities form the basis of Plaintiffs' First Cause of Action for breach of fiduciary duty against Clainos: (1) making misleading statements to Plaintiffs, (2) concealing information from Plaintiffs, (3) engaging in self-dealing in the Assignment and on other unspecified occasions, and (4) negligently characterizing, valuing, and distributing assets of Graham's estate. Plaintiffs then allege in their Second Cause of Action that the Greene Defendants aided and abetted Clainos's breach of fiduciary duty by: (1) making statements to, and concealing information from, Plaintiffs; (2) misstating information in filings in probate court and with the IRS and concealing information from the probate court; and (3) preparing the Assignment and assisting Clainos in self-dealing.

Protected activity under the anti-SLAPP statute includes "writing[s] made in connection with an issue under consideration or review by a . . . judicial body." Cal. Civ. Proc. Code § 425.16(e)(2). Thus, Clainos's activity is protected to the extent it involved making representations to the probate court, or preparing documents for filing in court. *See Cabral v. Martins*, 99 Cal. Rptr. 3d 394, 404 (Ct. App. 2009) ("Case law establishes that communications that are

intimately intertwined with, and preparatory to, the filing of judicial proceedings qualify as petitioning activity for the purpose of the anti-SLAPP statute."). Clainos's activity is also protected activity to the extent it involves statements made to the Plaintiffs, who had "some interest" in the probate proceedings. *Fremont Reorg. Corp. v. Faigin*, 131 Cal. Rptr. 3d 478, 489 (Ct. App. 2011) ("A statement is 'in connection with' an issue under consideration by a court in a judicial proceeding . . . if it relates to a substantive issue in the proceeding and is directed to a person having some interest in the proceeding."). However, as we discuss below, Clainos's activity related to executing the Assignment is unprotected conduct that, itself, does not implicate the right to petition.

Allegations of both protected and unprotected activity make the First Cause of Action a mixed cause of action. However, the protected activity is not "merely incidental" to the unprotected activity. *Wallace*, 128 Cal. Rptr. 3d at 218 (internal quotation marks omitted). Rather, protected activity "underl[ies]" Plaintiffs' breach of fiduciary duty claim here. *Salma*, 74 Cal. Rptr. 3d at 884. Plaintiffs could make out a legally sufficient breach of fiduciary duty claim, based solely on their allegations related to protected activity. *Mosier v. S. Cal. Physicans Ins. Exch.*, 74 Cal. Rptr. 2d 550, 565 (Ct. App. 1998) ("The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach."). Accordingly, Clainos has satisfied his burden of showing Plaintiffs' First Cause of Action arises from protected activity.

For substantially the same reasons, the Greene Defendants' statements to the probate court and to Plaintiffs about the subject matter of the probate proceedings are

protected activities. *See Cabral*, 99 Cal. Rptr. 3d at 404; *Fremont*, 131 Cal. Rptr. 3d at 489. These actions underlie the Second Cause of Action for aiding and abetting. *See Casey v. U.S. Bank*, 26 Cal. Rptr. 3d 401, 405 (Ct. App. 2005) (stating elements of cause of action for aiding and abetting breach of fiduciary duty); *see also Salma*, 74 Cal. Rptr. 3d at 884. Thus, even if the preparation of the Assignment and assisting Clainos in self-dealing are not protected, Plaintiffs' Second Cause of Action as a whole arises from protected activity under the rule governing mixed causes of action.

### 2. Third Cause of Action: Breach of Trust vs. Clainos

In their Third Cause of Action for breach of trust, Plaintiffs allege that Clainos breached duties he owed them as trustee of their testamentary trusts, not as executor of the Graham estate. Plaintiffs allege Clainos breached these duties in his "characterization, valuation and distribution of assets," and that the trusts received reduced distribution as a result. However, these activities were all preparatory to probate court filings, or required the probate court's approval. Accordingly, Plaintiffs' Third Cause of Action arises from protected activity. *See Cabral*, 99 Cal. Rptr. 3d at 404.

### 3. Fourth Cause of Action: Conversion vs. Clainos, the Greene Defendants & the BGA Defendants

Plaintiffs' Fourth Cause of Action asserts that Clainos, the Greene Defendants, and the BGA Defendants converted items of intellectual property ("The Fillmore" trademark and various copyrights), and personal property (poster scrapbooks and 100 sets of original posters). The district court held that

this cause of action, like the rest of Plaintiffs' complaint, arises from Clainos's and the Greene Defendants' protected activity. We disagree.

### a.  Clainos

Plaintiffs allege that Clainos converted personal property when he "took possession" of it. Additionally, Clainos allegedly concealed the existence of the personal property and may have moved it from Graham's personal warehouse to a warehouse BGE owned.

Generally, taking possession of personal property is not a protected activity, because it is conduct, not a written or oral statement. *See* Cal. Civ. Proc. Code § 425.16(e)(2). This conduct underlies Plaintiffs' conversion claim against Clainos. *See Hartford Fin. Corp. v. Burns*, 158 Cal. Rptr. 169, 172 (Ct. App. 1979) ("The elements of a conversion cause of action are (1) plaintiffs' ownership or *[r]ight to possession of the property at the time of the conversion*; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages.") (emphasis added) (quoting *Baldwin v. Marina City Props., Inc.*, 145 Cal. Rptr. 406, 416 (Ct. App. 1978)). Plaintiffs' allegation that Clainos "took possession" of the estate's personal property constitutes a "wrongful act" that would substantiate the second element of Plaintiffs' conversion claim. Thus, Plaintiffs' claim that Clainos converted personal property from the Graham Estate does not arise from protected activity.[6]

---

[6] We are aware that the conversion claim also rests on Clainos's alleged concealment of the existence or location of Graham's personal property, but those allegations do not change our conclusion.    Assuming

Plaintiffs also allege that Clainos converted *intellectual* property by preparing and executing the Assignment in 1995. According to Plaintiffs, Clainos executed the Assignment on August 31, 1995, but backdated the assignment to August 1, 1995, seven days before the probate court entered its final order of distribution. To the extent Plaintiffs' Fourth Cause of Action against Clainos arises from that Assignment, it does not arise from protected activity.

Clainos did not execute the Assignment in connection with any issues under consideration by a judicial body, for two reasons. *See* Cal. Civ. Proc. Code § 425.16(e)(2). First, the probate court never approved the sale of BGE, let alone its underlying tangible and intangible assets. The initial sale of BGE to its key employees occurred outside of probate proceedings, after the shares of BGE had been distributed out of the estate. Thus, the transfer of intellectual property through the Assignment occurred wholly outside the probate court's supervision.

Second, no California cases hold that activities undertaken after a judicial body has finished considering relevant issues are "in connection with" an issue under consideration. California courts have recognized that conduct can be protected by the anti-SLAPP statute, even though no issue is yet under consideration by a judicial body at the time the defendant engages in the conduct. For example, serving a notice terminating a tenancy is protected activity, if giving such notice is a "legal prerequisite" for filing a lawsuit.

"concealment" of such information is protected activity, *see Kupiec v. Am. Int'l Adjustment Co.*, 1 Cal. Rptr. 2d 371, 374 (Ct. App. 1991), that conduct is merely incidental to Plaintiffs' allegations of unprotected conduct.

*Birkner v. Lam*, 67 Cal. Rptr. 3d 190, 195 (Ct. App. 2007). Protection also extends to the act of revising a will before it has been filed in probate court, and the act of filing it in court. *Cabral*, 99 Cal. Rptr. 3d at 404. However, these circumstances are limited to conduct that occurs "in connection with or in preparation of litigation." *Kolar v. Donahue, McIntosh & Hammerton*, 52 Cal. Rptr. 3d 712, 716 (Ct. App. 2006).[7]

When Clainos executed the Assignment, the probate court did not have any other issues to consider regarding the distribution of the estate's assets. *See* Cal. Prob. Code § 11641 ("When an order settling a final account and for final distribution is entered, the personal representative may immediately distribute the property in the estate to the persons entitled to distribution, without further notice or proceedings."); *id.* § 11753(a) (discharging personal representative upon "[d]istribution in compliance with the court order"). As the probate court had already issued its final order of distribution, the Assignment was not prepared in

---

[7] Protecting out-of-court conduct that precedes the filing of the lawsuit is consistent with the purpose of the anti-SLAPP statute to eliminate litigation that chills the exercise of the right to petition. *See* Cal. Civ. Proc. Code § 425.16(a). Logically, an individual's right to petition could be substantially compromised if he could not fully prepare to petition because such conduct could result in liability. However, conduct undertaken *after* petitioning has ended does not present the same risk; any conduct undertaken at that time would have no effect on the earlier petitioning activity, unless it could be shown that the risk of future liability for post-petitioning activity was foreseeable at the time the defendant petitioned. Defendants have not made that showing here.

anticipation of the resolution of any issues by a judicial body.**[8]**

Clainos contends that, even if preparing and executing the Assignment is not protected activity, it is merely incidental to the other conduct alleged, and falls under the ambit of "seeing Graham's Estate through probate, and ensuring that [Plaintiffs] received their just share of it." However, the execution of the Assignment alone underlies the conversion claim against Clainos. Plaintiffs cannot avoid the legal effect of that activity by casting it together with other activities which would not result in liability. Further, Clainos does not directly address the significance of the fact that the Assignment occurred after the probate court was no longer considering issues related to the distribution of the Graham estate.

### b.  The Greene Defendants

Plaintiffs also seek to hold the Greene Defendants liable for aiding and abetting Clainos's conversion and conspiring with him to convert Graham's property. This derivative claim arises from the Greene Defendants' alleged: (1) falsifying

---

**[8]** Greene argues that the Assignment satisfies the "in connection with" requirement, because, at the time of the assignment, "the probate proceeding had not ended . . . and Clainos retained his role and authority as executor to effect the distribution in accordance with the Probate Court's order." This is beside the point; issues related to the distribution of assets of the estate were no longer under consideration by the probate court. It had resolved those issues when it entered its final order of distribution. Thus, even though the final order did not formally "close" the probate proceedings, *see* Cal. Prob. Code §§11641, 11753(a), the consideration of issues by the probate court had terminated by the time it was executed.

probate court filings, (2) concealing information from plaintiffs and the probate court, (3) making false statements to plaintiffs and the probate court, and (4) assisting with the preparation of the Assignment.

Plaintiffs' claim against the Greene Defendants arises from protected activity to the extent it is based on statements the Greene Defendants made to them and to the probate court. *See Cabral*, 99 Cal. Rptr. 3d at 404; *Fremont*, 131 Cal. Rptr. 3d at 489. However, Plaintiffs also base their claim for conversion of the *intellectual* property on unprotected activity: the Greene Defendants' "assisting with the preparation of the Assignment." Inclusion of this unprotected activity makes Plaintiffs' conversion claim against the Greene Defendants a mixed cause of action.

Even though mixed, this cause of action arises from protected activity, because protected activity "underl[ies]" the claim. *Salma*, 74 Cal. Rptr. 3d at 884. The Greene Defendants' preparation of probate court filings and representations to the Plaintiffs were protected activity. These activities could have constituted independent acts of aiding and abetting Clainos's conversion. *See Fiol v. Doellstedt*, 58 Cal. Rptr. 2d 308, 312 (Ct. App. 1996). Thus, this conduct is not merely incidental to the unprotected activity of preparing the Assignment. Therefore, the cause of action as a whole arises from protected activity.

### 4. Fifth Cause of Action (Deceit—Intentional Misrepresentation) & Sixth Cause of Action (Deceit—Negligent Misrepresentation) vs. Clainos & the Greene Defendants

Plaintiffs' Fifth and Sixth Causes of Action also arise from protected activity. Plaintiffs base these claims on allegations that Clainos and the Greene Defendants intentionally and negligently misrepresented numerous facts about the Graham estate and the probate proceedings to the Plaintiffs. Statements made to persons with an interest in a court proceeding are categorically protected activity under the anti-SLAPP statute. *Fremont*, 131 Cal. Rptr. 3d at 489.

### 5. Seventh Cause of Action: Fraud / Concealment vs. Clainos and the Greene Defendants

Plaintiffs' Seventh Cause of Action against Clainos and the Greene Defendants for actual fraud and / or concealment under California Civil Code § 1572 also arises from protected activity. In this cause of action, Plaintiffs primarily fault Clainos and the Greene Defendants for not disclosing the Graham estate's alleged interest in the intellectual property, scrapbooks, or poster series. This amounts to an allegation that Clainos and the Greene Defendants failed to disclose important information regarding the assets of the estate, while the probate court was considering how those assets should be distributed. As previously stated, communicating about the subject matter of litigation to a person with an interest in the litigation is a protected activity. *Fremont*, 131 Cal. Rptr. 3d at 489. For purposes of this analysis, it makes no difference that Plaintiffs include allegations of omissions, rather than only affirmative misrepresentations. *See Navellier v. Sletten*, 131 Cal. Rptr. 2d 201, 206 (Ct. App. 2003) ("The [litigation]

privilege informs interpretation of the 'arising from' prong of the anti-SLAPP statute . . . ."); *see also Kupiec v. Am. Int'l Adjustment Co.*, 1 Cal. Rptr. 2d 371, 374 (Ct. App. 1991) (holding that concealment is privileged activity).

### 6. Eighth Cause of Action: Promissory Estoppel vs. Clainos

Plaintiffs' Eighth Cause of Action alleges that Clainos is liable for promissory estoppel. Plaintiffs allege that, "in his capacity as executor of the estate . . . [Clainos] promised plaintiffs that all of Bill Graham's scrapbooks would be given to plaintiffs." Plaintiffs further assert that Clainos made this promise "[a]s part of the distribution of the assets of the Estate." This allegation plainly underlies Plaintiffs' promissory estoppel claim. *See Aceves v. U.S. Bank*, 120 Cal. Rptr. 3d 507, 514 (Ct. App. 2011) (stating elements of promissory estoppel cause of action).

Because Clainos made this statement to parties with an interest in the litigation about the subject matter of the probate proceedings (the distribution of assets), we conclude under *Fremont* that this cause of action arises from protected activity. 131 Cal. Rptr. 3d at 489.

Plaintiffs' argument that their promissory estoppel claim does not arise from protected activity, because it is not based on communications in probate court itself, is irrelevant. California does not limit "protected activity" to only communications directed to an adjudicative body. Rather, the statements only need to be made "in connection with an issue under consideration" by such a body. Cal. Civ. Proc. Code § 425.16(e)(2). Clainos's alleged promise relating to the

distribution of the estate assets fits within this class of conduct.

### 7. Ninth Cause of Action: Unjust Enrichment vs. Clainos

Finally, Plaintiffs' Ninth Cause of Action does not arise from protected activity. Plaintiffs allege that "Clainos misappropriated and converted [assets] of the Estate for purposes of reselling them for his own personal enrichment." Further, Plaintiffs allege that Clainos received $9.125 million for his shares in BGP when SFX purchased the business in 1997, including a signing bonus. These activities do not implicate statements or writings Clainos made to the probate court or to the Plaintiffs.

Clainos does not specifically argue on appeal that this cause of action arises from protected activity. Presumably he would characterize it as protected, because it arises from his activities as executor of the estate. However, as discussed above, that fact alone does not make a cause of action protected (especially this one, which alleges entirely unprotected activity).

## B. Reasonable Probability of Prevailing

When a defendant bringing an anti-SLAPP motion has shown that a cause of action arises from protected activity, the plaintiff then must demonstrate "a reasonable probability of prevailing in its claims for those claims to survive dismissal." *Mindys*, 611 F.3d at 598 (internal quotation marks omitted). "Reasonable probability in the anti-SLAPP statute [means] . . . . only a minimum level of legal sufficiency and triability." *Id.* (internal quotation marks omitted). To

determine whether the plaintiff has made this showing, the court "consider[s] the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2). Accordingly, Plaintiffs meet their burden if "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Mindys*, 611 F.3d at 599 (internal quotation marks omitted).

Here, the district court did not analyze Plaintiffs' reasonable probability of prevailing by evaluating whether they had provided sufficient prima facie evidence of the legal sufficiency of any of their claims. Instead, the court held that Plaintiffs could not prevail on *any* claim, in the face of three substantive defenses: (i) the litigation privilege, (ii) the statute of limitations, and (iii) res judicata. Thus, the issue on appeal is whether the Plaintiffs have made a sufficient showing to overcome those defenses as to each of its stricken causes of action. *See Flatley v. Mauro*, 139 P.3d 2, 17 (Cal. 2006) (noting that plaintiff opposing an anti-SLAPP motion must overcome the substantive defense of the litigation privilege "to demonstrate a probability of prevailing").

## 1. Litigation Privilege

California's litigation privilege applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." *Mansell v. Otto*, 133 Cal. Rptr. 2d 276, 280 (Ct. App. 2003). The privilege "immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception

of causes of action for malicious prosecution." *Olsen v. Harbison*, 119 Cal. Rptr. 3d 460, 467 (Ct. App. 2010). Thus, "[t]he litigation privilege . . . present[s] a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." *Flatley*, 139 P.3d at 17.

### a. Clainos

The district court determined that the litigation privilege defeated Plaintiffs' claims against Clainos to the extent they were "based on statements Clainos made in the probate proceedings."[9] We agree, because Clainos's statements were (1) made in a judicial proceeding, (2) by the executor (a participant authorized by law), (3) to achieve the distribution of the estate's assets, and (4) a central part of the estate's administration. *See Kupiec*, 1 Cal. Rptr. 2d at 374.

We reject Plaintiffs' arguments that: (1) applying the litigation privilege to Clainos's conduct produces an "irreconcilable conflict" with state laws, and (2) the litigation privilege should not apply to fiduciaries.

First, Plaintiffs do not cite any cases holding that applying the litigation privilege to Clainos's statements in the probate proceedings would create an impermissible conflict with state law. *Action Apartment Ass'n v. City of Santa Monica*, 163 P.3d 89 (Cal. 2007), which they do cite, is distinguishable. *Action Apartment* acknowledged numerous state statutes that had abrogated the litigation privilege by

---

[9] The litigation privilege also bars Plaintiffs' claims to the extent they are based on probate-related statements Clainos made to Plaintiffs. *Rodriguez v. Panayiotou*, 314 F.3d 979, 988 (9th Cir. 2002) ("The California courts have applied the privilege quite expansively.").

authorizing sanctions for types of speech that would otherwise fall within the privilege. *Id.* at 98–99. For example, perjury statutes criminalize statements made under oath, Cal. Penal Code § 118(a); many such statements likely fall within the litigation privilege's scope. In actions under such statutes, courts have jettisoned the privilege, because applying it would cause "irreconcilable conflicts between the privilege and other co-equal state laws." *Action Apartment*, 163 P.3d at 99.

Plaintiffs do not assert any claims under such statutes. They cite the perjury statute, but the instant litigation is not a criminal prosecution for perjury. They also cite probate statutes, which impose a variety of duties on the executor. However, unlike the statutes discussed in *Action Apartment*, none of those probate statutes authorize criminal or civil action against the executor based on the statements made in court. *See* 163 P.3d at 98; *see also Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1100–01 (C.D. Cal. 2006) (holding that statute proscribing abusive debt-collection practices not subject to litigation privilege). Thus, Plaintiffs have not shown that applying the privilege to Clainos's statements would result in an "irreconcilable conflict" between the privilege and California state law.

Plaintiffs then argue that, because the litigation privilege does not apply to malpractice claims asserted against attorneys by their clients, it should not apply to Plaintiffs' claims against Clainos. According to Plaintiffs, Clainos (like an attorney representing his client) acted as a representative of the beneficiaries in his capacity as executor, and therefore he should be similarly deprived of the litigation privilege here. Even if this premise is correct, California has not eliminated the privilege for such claims. California *has*

exempted malpractice claims asserted by clients against both their attorneys and expert witnesses. *See Kolar*, 52 Cal. Rptr. 3d at 718–19. But here, Plaintiffs do not assert a *malpractice* claim and have not cited any cases that pierce the litigation privilege for claims by beneficiaries against executors.

### b.  The Greene Defendants

The litigation privilege also bars Plaintiffs' claims against the Greene Defendants to the extent they are based on certain types of conduct. In California, any statement made in a "judicial proceeding" or "any other official proceeding authorized by law" is privileged. Cal. Civ. Code § 47(b). This privilege extends to statements made outside of judicial proceedings. In *Chang v. Lederman*, 90 Cal. Rptr. 3d 758 (Ct. App. 2009), the court held that the privilege encompassed a letter sent by a lawyer, who was representing a trustee, to the occupant of a residence owned by the trust. 90 Cal. Rptr. 3d at 774–75. The letter was privileged, even though probate proceedings had not yet been initiated. *Id.* at 763, 775. Similarly, in *Steiner v. Eikerling*, 226 Cal. Rptr. 694 (Ct. App. 1986), the court held that the privilege encompassed both the filing of a forged will in probate court and the act of preparing the will. 226 Cal. Rptr. at 696.

Given its broad scope, the litigation privilege protects the Greene Defendants from liability based on (1) filings made in the probate court; and (2) statements made to (and information concealed from) both Plaintiffs and the probate court related to the probating of the estate.

### 2.  Statute of Limitations

No one disputes that the statute of limitations, which is four years at most, bars all of Plaintiffs' claims in the absence of an applicable tolling doctrine. *See generally* Cal. Civ. Proc. Code § 338 (three-year statute of limitations applicable to variety of civil claims, including fraud); *David Welch Co. v. Erskine & Tulley*, 250 Cal. Rptr. 339, 344 (Ct. App. 1988) (holding four-year statute of limitations applies to breach of fiduciary duty claims). Rather, the parties disagree over whether the statute of limitations was tolled because Clainos was Plaintiffs' fiduciary. The district court held that: (1) Plaintiffs had notice of the facts giving rise to their claims based on the intellectual property and the scrapbooks; (2) the notice triggered the statute of limitations; and (3) as a result, the statute had run prior to suit. We disagree.

"In cases involving fraud . . . the statute commences to run when the plaintiff discovers he has a cause of action or, through the use of reasonable diligence, should have discovered it." *Bennett v. Hibernia Bank*, 305 P.2d 20, 32 (Cal. 1956). However, "the same degree of diligence is not required where a fiduciary relationship exists between the parties at the time the alleged acts of negligence occur." *Elec. Equip. Express, Inc. v. Donald H. Seiler & Co.*, 176 Cal. Rptr. 239, 252 (Ct. App. 1981). Regardless, Plaintiffs have "a duty to investigate even where a fiduciary relationship exists when [they have] notice of facts sufficient to arouse the suspicions of a reasonable man." *Id.* (internal quotation marks omitted).

In this case, the parties do not dispute that, as the executor of the Graham estate and trustee of Plaintiffs' testamentary trusts, Clainos owed Plaintiffs a fiduciary duty. *See Estate of*

*Sanders*, 710 P.2d 232, 237 (Cal. 1985) (executor owes fiduciary duty to estate beneficiaries). Thus, even though Plaintiffs had some duty to investigate the facts surrounding the distribution of assets from their father's estate, that duty was limited, because they were "entitled to rely on the statements and advice provided by the fiduciary." *Eisenbaum v. W. Energy Res., Inc.*, 267 Cal. Rptr. 5, 11 (Ct. App. 1990) (internal quotation marks omitted); *see Hobbs v. Bateman Eichler, Hill Richards, Inc.*, 210 Cal. Rptr. 387, 404 (Ct. App. 1985). Plaintiffs' duty to investigate differs with respect to their claims regarding the intellectual and personal property.

### a.  Intellectual Property

Defendants contend that the statute of limitations has run on Plaintiffs' claims, to the extent they are based on the intellectual property, because Plaintiffs had notice of their interest in the intellectual property. The district court agreed, concluding that: (a) Plaintiffs had notice of the Assignment in 1997, because their attorney had received a copy of an agreement that referenced it; and (b) Plaintiffs had notice that their father had copyrights registered in his name at an earlier time.  We reject these conclusions

First, Plaintiffs were not put on notice of the Assignment in 1997. The district court relied on the fact that Richard Greene sent Feldman—then David and Alex's lawyer—a copy of the portion of the sale agreement, which outlined the transfer of intellectual property in the sale of BGP to SFX.[10]

---

[10] Plaintiffs' argument that they should not be charged with notice of the Assignment in 1997, because whether Feldman *actually* received Schedule 3.18 is a disputed fact is irrelevant. Defendants do not claim that Feldman received Schedule 3.18. The relevant, undisputed fact is that Feldman

That provision incorporated by reference a "Schedule 3.18," to which the Assignment was attached. However, neither Schedule 3.18 nor the Assignment accompanied the copy of Section 3.18 that Greene sent to Feldman. The district court concluded that the incorporation of Schedule 3.18 by reference should have put Feldman (and by extension, Alex and David) on notice of the facts surrounding the transfer of intellectual property Plaintiffs now claim is fraudulent. But we take a different view.

Because Clainos was Plaintiffs' fiduciary, Plaintiffs were entitled to rely on the "statements and advice" he gave them. *Eisenbaum*, 267 Cal. Rptr. at 11 (internal quotation marks omitted). Thus, when he told them that the inventories and accountings filed with the probate court were complete, they were entitled to believe him. They did not have a duty to investigate facts surrounding the sale of BGE to the key employees or subsequent transactions, to the extent the facts they *knew* were consistent with what Clainos had told them. The reference to Schedule 3.18 in Section 3.18 of the SFX sale agreement was not sufficient to arouse the suspicions of a reasonable person, because BGP's sale of some intellectual property assets was entirely consistent with what Clainos had told Plaintiffs to that point. Only *actual* knowledge of the Assignment would have aroused Plaintiffs' suspicions that something was amiss, because the Assignment was dated well after the actual sale to the key employees and implied that the estate could have had a direct interest in some items of intellectual property at one time. However, Greene sent

received a copy of Section 3.18 of the SFX Sale Agreement, which incorporated *Schedule* 3.18 by reference. Because Greene did not send Feldman a copy of Schedule 3.18, the issue is whether the language of Section 3.18 put Plaintiffs on notice.

neither Schedule 3.18 nor the Assignment to Feldman with Section 3.18. Therefore, we cannot say that Feldman's receipt of Section 3.18 made Plaintiffs "aware of facts which would make a reasonably prudent person suspicious." *Hobbs*, 210 Cal. Rptr. at 404 (emphasis omitted). Receiving Section 3.18 may have triggered Plaintiffs' duty to read,[11] but it did not give rise to the duty to investigate for purposes of the statute of limitations. *See id.* As a result, Plaintiffs are not charged with knowledge of the Assignment until they discovered it in 2009.

Second, we are not convinced that the copyright symbols on Graham's posters put Plaintiffs on notice that their father "may have registered intellectual property in his name." Whether Plaintiffs saw the copyright symbols on their father's posters appears to be a disputed question of fact.[12]

---

[11] The district court cited cases dealing with the duty to read in contract law. *Madden v. Kaiser Found. Hosps.*, 552 P.2d 1178, 1185 (Cal. 1976) ("[O]ne who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument."). However, the issue here is not whether a party is bound by a term in a contract they signed without having read the term. The issue is whether Feldman read anything that would have contradicted the representations Clainos made to Plaintiffs regarding the estate assets, thereby putting him on notice that Clainos may have been misrepresenting the facts.

[12] Plaintiffs submitted the declarations of Jacques Fabert (David's then-trustee) and Feldman, who stated that Clainos led them to believe that the Archives (here, including the intellectual property) belonged to BGE. Fabert further stated he had no reason to believe that Graham had intellectual property registered in his name prior to 2009. Clainos submitted a declaration contradicting Plaintiffs' evidence, citing numerous opportunities Plaintiffs had to view the copyright-symbol-bearing posters. Given these opportunities, Clainos concludes that "[i]t is inconceivable that Plaintiffs never saw posters bearing the '© Bill Graham' notice" and that Plaintiffs do not deny this in their declaration.

However, even if Plaintiffs saw the copyright symbols on their father's posters, the issue is whether those symbols would have put Plaintiffs on notice of facts indicating that Clainos had misrepresented that BGE owned the Archives. *Hobbs*, 210 Cal. Rptr. at 404. The fact that the posters bore the copyright symbol of Bill Graham is not inconsistent with Clainos's alleged representations to Plaintiffs. BGE, which Bill Graham owned entirely at the time of his death, used the posters in its concert promotion business. Under these circumstances, a reasonable person, seeing the copyrighted posters, would not necessarily conclude that Clainos's statement to the Plaintiffs that BGE owned the Archives was a misrepresentation. Rather, a reasonable person could logically conclude that, even if Bill Graham created the posters initially, he had subsequently transferred them to BGE, which now used them as part of its business operations. Moreover, a copyright symbol itself does not indicate that the work on which it appears is protected by a *registered* copyright.[13] Thus, even if Plaintiffs had viewed the copyright symbols on some of their father's posters, such viewing would not have triggered their duty to investigate Clainos's representations regarding ownership of the estate's assets.

### b.  Personal Property

The district court also erred by holding that the statute of limitations barred Plaintiffs' claims to the extent they are based on the disputed personal property. The district court concluded that Plaintiffs were on notice that "they should investigate the nature of Bill Graham's personal holdings," because Plaintiffs were "responsible for identifying the

---

[13] Here, for example, David Graham's mother inscribed the copyright notices on the posters herself.

personal property of their father to which they were entitled." On appeal, Plaintiffs assert that Clainos controlled their access to Graham's personal property, that he did not give them full access to all of his memorabilia, and that they never had reason to know that they were not given full access to all of his scrapbooks.

Whether Plaintiffs in fact had access to all of Graham's archives, and what Clainos and the Greene Defendants told Plaintiffs about the archives they did have access to, appears to be a factual dispute. Creating a mere dispute of fact is not sufficient to prevail on a motion to strike. *See Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 35 Cal. Rptr. 3d 31, 43 (Ct. App. 2005). Rather, "the evidence submitted by the plaintiff [must be] credited" when ruling on a motion to strike. *Id.* (internal quotation marks omitted). Thus, the district court erred by holding that the statute of limitations bars Plaintiffs' claims to the extent they are based on the disputed personal property.

### c. Conclusion

In sum, Plaintiffs produced evidence that could overcome the statute of limitations defense. We reverse and remand so that the district court can evaluate whether Plaintiffs have made a sufficient showing to establish a prima facie cause of action to the extent their claims are not barred by other defenses.

### 3. Res judicata

We also disagree with the district court's conclusion that res judicata barred Plaintiffs' claims to the extent they were

based on the disputed scrapbooks. Plaintiffs made a sufficient showing to overcome this substantive defense.

California's Probate Code provides that the final order of the probate court generally discharges the personal representative from all claims by heirs "based upon any act or omission directly authorized, approved, or confirmed in the judgment or order." Cal. Prob. Code § 7250(a). However, the final order does not have this effect if the order is "obtained by fraud or conspiracy or by misrepresentation contained in the petition or account or in the judgment as to any material fact." *Id.* § 7250(c).

Here, Plaintiffs' allegations of Clainos's fraud were sufficient to overcome Clainos's substantive res judicata defense. "Fraudulent concealment of assets by an administrator . . . constitutes extrinsic fraud," which will preclude a probate court's final order from having res judicata effect. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1287 (9th Cir. 1992); *see Lazzarone v. Bank of Am.*, 226 Cal. Rptr. 855, 864 (Ct. App. 1986). Plaintiffs' Complaint alleges that Clainos promised that they would receive all the scrapbooks, and they thought they had received them, but that Clainos controlled their access to the scrapbooks. Thus, Plaintiffs allege that Clainos concealed the existence of ten scrapbooks. In declarations, Plaintiffs further state their belief that Clainos did not provide them with full access to the archives, or a full inventory of them. Thus, Plaintiffs have shown that their claims regarding the scrapbooks are not entirely without merit by operation of res judicata. *See Mindys*, 611 F.3d at 599.

### 4. Business Judgment Rule

Finally, we reject Clainos's argument that the business judgment rule protects him from liability for all of his actions as executor of the Graham estate. In the probate context, the business judgment rule provides that "an executor or administrator is not liable for any decreases in the value of estate assets on account of his acts or omissions done in good faith and without negligence." *Estate of Beach*, 542 P.2d 994, 1004 (Cal. 1975). Here, the same allegations Plaintiffs can rely on to overcome the statute of limitations and res judicata are also sufficient to show that Clainos lacked good faith, at least for purposes of overcoming the business judgment rule defense here.

### C. Conclusion[14]

Because we disagree with the district court's analysis of the substantive defenses, in this section we analyze the implications of that conclusion on each of Plaintiffs' claims against Clainos and the Greene Defendants.

### 1. First Cause of Action: Breach of Fiduciary Duty vs. Clainos

We reverse the district court's decision to strike Plaintiffs' First Cause of Action. While we agree with the

---

[14] Plaintiffs argue, for the first time on reply, that the district court erred by granting Clainos's and the Greene Defendants' motions to strike, without giving them an opportunity to amend their complaint. The argument is waived. *See Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 928 n.6 (9th Cir. 2010) (noting argument not presented in opening brief on appeal is waived).

district court that the litigation privilege bars this claim based on statements Plaintiffs made to the probate court or to the Plaintiffs themselves, Plaintiffs also allege that Clainos breached his fiduciary duty by engaging in activities that the litigation privilege does not protect.[15] Thus, we remand for the district court to determine whether Plaintiffs can make an adequate showing to survive a motion to strike on the remainder of the claim.

### 2. Second Cause of Action: Aiding & Abetting Breach of Fiduciary Duty vs. The Greene Defendants

We affirm the district court's decision to strike Plaintiffs' Second Cause of Action. The district court held that the general three-year statute of limitations, California Civil Procedure Code § 338(d), barred Plaintiffs' claims against the Greene Defendants. As discussed above, that limitations period was tolled due to Clainos's fiduciary relationship with Plaintiffs. However, Greene relies on a different statute of limitations, which is not subject to the fiduciary-tolling rule.[16]

---

[15] These include allegations that Clainos breached his fiduciary duty by "engaging in repeated acts of self dealing," "engineering a sale of BGE to himself and other key employees while secretly transferring the Copyrights and 'The Fillmore' trademark to BGE," and "failing to use due care in characterizing, valuing and distributing the assets of the Bill Graham Estate."

[16] The Greene Defendants did not raise this statute of limitations defense in their motions or replies in the district court. However, Plaintiffs have not argued that the Greene Defendants waived this argument, and have therefore waived the opportunity to object on that ground. *See Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2009) ("It is well-established that a party can waive waiver implicitly by failing to assert it." (internal quotation marks omitted)).

California Civil Procedure Code § 340.6(a) bars "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services . . . four years from the date of the wrongful act or omission." Plaintiffs' whole claim that the Greene Defendants aided and abetted Clainos's breach of fiduciary duty arises from the Greene Defendants' performance of professional services representing Clainos in his role as executor. The "actual fraud" exception to § 340.6(a) does not apply to this claim, because Plaintiffs' Second Cause of Action only alleges that the Greene Defendants aided and abetted a breach of fiduciary duty—not that they committed actual fraud. Accordingly, Plaintiffs do not have a reasonable probability of prevailing against the Greene Defendants on their Second Cause of Action.

### 3. Third Cause of Action: Breach of Trust vs. Clainos

We affirm the district court's decision to strike Plaintiffs' Third Cause of Action. This claim arises from Clainos's characterization, valuation, and proposed distribution of assets, which were all related to filings made with the probate court. Accordingly, it is barred by the litigation privilege.

Moreover, "[t]he principal purpose of [the litigation privilege] is to afford litigants and witnesses . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Rodriguez*, 314 F.3d at 988 (alterations in original) (internal quotation marks omitted). Applying the privilege to Clainos's activities here is consistent with this purpose, because it ensures he could submit to the court a distribution plan that best effectuates the wishes of the decedent, free from the risk of collateral

litigation by beneficiaries in the potentially contentious context of probate.

> ### 4. Fifth Cause of Action (Deceit—Intentional Misrepresentation); Sixth Cause of Action (Deceit—Negligent Misrepresentation) vs. Clainos and the Greene Defendants; Seventh Cause of Action: Fraud & Concealment vs. Clainos & the Greene Defendants; Eighth Cause of Action: Promissory Estoppel vs. Clainos

We affirm the district court's decision to strike Plaintiffs' Fifth, Sixth, Seventh, and Eighth causes of action. These claims are based on alleged "communications with *some* relation to judicial proceedings," and therefore fall within the litigation privilege.[17] *Rubin v. Green*, 847 P.2d 1044, 1047 (Cal. 1993) (emphasis added) (internal quotation marks omitted). As such, these communications are "absolutely immune from tort liability," *id.*, and Plaintiffs cannot show that they have a probability of succeeding on these claims.[18]

## II. Motion to Dismiss

Plaintiffs also challenge the district court's dismissal with prejudice of their claims against the BGA Defendants for (1)

---

[17] Even causes of action based on alleged concealment of information, rather than affirmative communications, are protected by the litigation privilege. *See Kupiec*, 1 Cal. Rptr. 2d at 374.

[18] We need not address the second prong of the anti-SLAPP analysis for Plaintiffs' Fourth or Ninth causes of action, because these causes of action do not arise from protected activity. *Hylton*, 99 Cal. Rptr. 3d at 809.

conversion, (2) promissory estoppel, (3) unjust enrichment, (4) copyright infringement, and (5) declaratory relief. We affirm in part and reverse in part.[19]

## A. Standard of Review

We review the district court's grant of a motion to dismiss de novo. *Caldwell v. Enstrom Helicopter Corp.*, 230 F.3d 1155, 1156 (9th Cir. 2000). Dismissal without leave to amend is reviewed for abuse of discretion. *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1079 (9th Cir. 2012).

## B. Analysis

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). Even when dismissal of a complaint might be warranted, Federal Rule of Civil Procedure 15(a) authorizes parties to amend their complaint "with . . . the court's leave." Fed. R. Civ. P. 15(a)(2).

---

[19] We reject the BGA Defendants' argument that the statute of limitations bars all of the Plaintiffs' claims. Plaintiffs alleged that Clainos was their fiduciary and that they relied on his representations regarding the content, value, and distribution of the estate assets. The existence of this fiduciary relationship relieved Plaintiffs of the duty to investigate the facts (including those that gave rise to their claims against the BGA Defendants), tolling the statute of limitations.

## 1. Fourth Cause of Action: Conversion

We reverse the district court's dismissal of Plaintiffs' claim that the BGA Defendants converted the copyrights, trademark, and scrapbooks in or around 2002.[20] To establish their claim for conversion at trial, Plaintiffs would be required to prove, first of all, ownership or a right to possess the converted property. *See Fremont Indem. Co. v. Fremont Gen. Corp.*, 55 Cal. Rptr. 3d 621, 638 (Ct. App. 2007) ("The basic elements of [conversion] are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages."). Here, the district court concluded that Plaintiffs' allegations did not show that they were entitled to ownership or possession of either asset as of the date the BGA Defendants took possession of the property, and that Plaintiffs failed to plead facts showing that the BGA Defendants engaged in wrongdoing.

We disagree. Plaintiffs alleged the following facts surrounding the initial transfer of the intellectual property from the Graham estate to BGE: (1) the posters were Graham's personal project, and he only permitted his businesses to use the designs; (2) Graham had registered copyrights in his own name, confirming his intent that they be his personal property; (3) as Graham's personal property, these items became part of his estate; and (4) as beneficiaries of the Graham estate, Plaintiffs were entitled to a pro rata

---

[20] Plaintiffs also allege that the BGA Defendants took possession of the converted "personal property." However, the only specific personal property Plaintiffs mention is the scrapbooks; Plaintiffs do not make specific allegations about the disputed poster series.

share of the intellectual property and personal property as of the date of the probate court's orders of distribution. Taking these allegations as true, *Iqbal*, 556 U.S. at 678, it is plausible that Plaintiffs were entitled to a share of the disputed intellectual and personal property as of 2002 when the BGA Defendants took possession of it.

The district court also held that, on the second element of their conversion claim, Plaintiffs failed to allege facts suggesting that the BGA Defendants engaged in wrongdoing. We also disagree with this conclusion. Under California law, a plaintiff must only allege that the defendant assumed "control or ownership over the property" or "applied the property to his own use" to plead this element of a conversion claim. *Oakdale Vill. Grp. v. Fong*, 50 Cal. Rptr. 2d 810, 812 (Ct. App. 1996) (noting that "[c]onversion is . . . a strict liability tort").[21] Plaintiffs' allegation that the BGA Defendants "took possession of a portion of [the] converted intellectual and personal property" in 2002 satisfies this requirement. Accordingly, the district court erred by dismissing this claim.[22]

---

[21] The BGA Defendants could assert a defense as an innocent purchaser. *See CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1145 (9th Cir. 2010). However, they did not raise it in their motion to dismiss or on appeal. Additionally, Plaintiffs alleged in their complaint that Sagan knew of the prior fraudulent transfers of the Copyrights and the scrapbooks. Taken as true, *Iqbal*, 556 U.S. at 678, that allegation defeats the BGA Defendants' innocent purchaser defense. *See Laxton*, 600 F.3d at 1145 ("As a general rule, an innocent purchaser for value and *without actual . . . notice* that his or her vendor has secured the goods by a fraudulent purchase is not liable for conversion.") (emphasis added) (internal quotation marks omitted).

[22] The district court did not analyze the damages element of the conversion claim, and the parties do not dispute it on appeal. Nevertheless, Plaintiffs have pleaded sufficient facts to support that element.

## 2.  Eighth Cause of Action: Promissory Estoppel

We affirm the district court's dismissal of Plaintiffs' Eighth Cause of Action against the BGA Defendants. Four elements comprise a promissory estoppel claim: (1) a promise, (2) reasonable and (3) foreseeable reliance by the promisee, and (4) injury to the promisee. *U.S. Ecology, Inc. v. State*, 28 Cal. Rptr. 3d 894, 905 (Ct. App. 2005). Plaintiffs did not allege that the BGA Defendants had made any promise to them.[23] Because Plaintiffs have not argued that they could provide evidence of such a promise, the district court had the discretion to dismiss this claim without leave to amend.

## 3.  Tenth Cause of Action: Unjust Enrichment

We also affirm the district court's dismissal of Plaintiffs' Tenth Cause of Action for "unjust enrichment" against the BGA Defendants. Defendants argue that "unjust enrichment" is not a cause of action in California, and Plaintiffs do not

---

[23] Plaintiffs do allege that Clainos (assisted by the Greene firm) promised to deliver all of Graham's scrapbooks to them. Thus, by asserting a promissory estoppel claim against the BGA Defendants, Plaintiffs seek to enforce a promise made to them (the promisees) by Clainos (the promisor) *against* the BGA Defendants (a third party to the promise). Currently this is not a cognizable claim under California law. The authorities Plaintiffs cite are unpersuasive. *Burgess v. California Mutual Building & Loan Ass'n*, 290 P. 1029 (Cal. 1930), involved the enforcement of a promise against a promisor by a third-party to the promise, and is therefore distinguishable from this case. 290 P. at 1031–32. Likewise, we will not read the general principle "where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened, must be the sufferer," *Powers v. Pac. Diesel Engine Co.*, 274 P. 512, 514 (Cal. 1929) (quoting Cal. Civ. Code § 3543) (internal quotation marks omitted), to give rise to a new cause of action.

dispute this. *See, e.g.*, *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Ct. App. 2010) ("There is no cause of action in California for unjust enrichment.") (internal quotation marks omitted). Plaintiffs' Tenth Cause of Action therefore fails to state a claim, and the district court properly dismissed it without leave to amend.[24] *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013).

### 4. Eleventh Cause of Action: Copyright Infringement

We reverse the district court's dismissal of Plaintiffs' copyright infringement claim. The district court dismissed this claim, because it concluded that the Assignment effectively transferred ownership of the Copyrights from the Graham estate to BGE and then to the BGA Defendants through the transactions that followed. However, as discussed above, *see supra* Part II.B.1, Plaintiffs pleaded enough facts to show that the Assignment was not effective, and that they therefore had a legitimate claim to the Copyrights when the BGA Defendants obtained them. Accordingly, we reverse the district court's dismissal of this claim. Because we reverse the district court's dismissal of this claim, we also vacate the fee award to the BGA Defendants.

---

[24] Even were "unjust enrichment" a viable cause of action, the BGA Defendants paid considerable value for the intellectual property. Plaintiffs therefore would not be able to adequately plead such a claim.

## 5. Twelfth Cause of Action: Declaratory Judgment

Finally, we reverse the district court's dismissal of Plaintiffs' Twelfth Cause of Action for a declaratory judgment against the BGA Defendants. The district court incorrectly concluded that Plaintiffs "ha[d] not alleged facts showing that there is an actual case or controversy." *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). As discussed above, the issue of the validity of the Assignment and who has a current right to own the intellectual property is a disputed issue of fact and law. Accordingly, this case presents an actual controversy, and the district court erred by dismissing it for lack of that prerequisite.[25]

## 6. Conclusion

We affirm in part and reverse in part the district court's grant of the BGA Defendants' motion to dismiss. Because we reverse the dismissal of the copyright infringement claim, we address below the district court's award of attorney's fees under 17 U.S.C. § 505.

---

[25] We acknowledge that, typically, the district court has the discretion to dismiss or entertain a declaratory judgment action. But, here, the district court did not dismiss Plaintiffs' declaratory judgment claim as an exercise of its discretion. Rather, it concluded, as a matter of law, that this case lacked the pre-requisite of a "case or controversy." However, on remand, the district court may exercise its discretion to determine whether to entertain the declaratory judgment action.

## III.    Attorney's Fees

Under the anti-SLAPP statute's fee-shifting provision, the district court awarded Clainos and the Greene Defendants attorney's fees for prevailing on the motion to strike. Likewise, the district court awarded fees to the BGA Defendants under the Copyright Act's fee-shifting provision. Plaintiffs appeal these attorney's fee awards.

### A.  Anti-SLAPP

After prevailing on the anti-SLAPP motion, Clainos requested $133,431.50, and the Greene Defendants requested $260,506.50. The district court awarded Clainos $126,431.50, plus fees for the reply, and awarded the Greene Defendants $240,506.00 plus "reasonable fees on fees."

Because we reverse the district court's grant of Clainos's motion to strike, we must also vacate his award of attorney's fees. *See Paul for Council v. Hanyecz*, 102 Cal. Rptr. 2d 864, 872 (Ct. App. 2001) ("Because we have determined defendants should not have prevailed on their motion to strike, it follows that they are not entitled to the fees and costs the trial court awarded them."), *disapproved of on other grounds by Equilon Enters. v. Consumer Cause, Inc.*, 52 P.3d 685 (Cal. 2002). However, because we affirm the grant of the motion to strike as to the Greene Defendants, we address Plaintiffs' specific challenges to the fee award.

### 1.  Standard of Review

State law governs attorney's fees awards based on state fee-shifting laws, like California's anti-SLAPP statute. *See Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011). Under

California law, therefore, we review the district court's award of attorney's fees under the anti-SLAPP statute for abuse of discretion. *Nichols v. City of Taft*, 66 Cal. Rptr. 3d 680, 684 (Ct. App. 2007). "A trial court's exercise of discretion concerning an award of attorney fees will not be reversed unless there is a manifest abuse of discretion." *Id.* "[R]eversal is appropriate where [1] there is no reasonable basis for the ruling or [2] the trial court has applied the wrong test or standard in reaching its result." *Id.* at 685 (internal quotation marks omitted).

### 2. Analysis

Plaintiffs first argue that the fees awarded to the Greene Defendants are unreasonable, because the award is much greater than the fees that courts have awarded to successful anti-SLAPP defendants in some other cases. That discrepancy does not make the district court's award unreasonable or a product of applying the wrong standard. *See Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 77 Cal. Rptr. 3d 695, 703 (Ct. App. 2008) (rejecting 50 hour figure as an upper limit for the hours allowed an anti-SLAPP motion). Defining what is reasonable by reference to other cases would violate the principle that "each fee application under [the anti-SLAPP statute] must be assessed on its own merits . . . taking into account what is reasonable under the circumstances." *Id.* Such an approach would also "conflict with application of the deferential abuse of discretion standard [we must] apply on appeal." *Id.* Thus, the solitary fact that the fee awarded in this

case is higher than that awarded in other cases does not make it an abuse of discretion.[26]

Next, Plaintiffs argue that the district court awarded an unreasonable fee, because it granted fees for hours that the Greene Defendants' lawyers expended that were not exclusively in pursuit of the anti-SLAPP motion. These hours included time lawyers spent on the motion to dismiss, reply, other filings, document review, and preparing initial disclosures. Citing *Christian Research v. Alnor*, 81 Cal. Rptr. 3d 866 (Ct. App. 2008), Plaintiffs argue that, by awarding fees for these hours, the district court failed to apply the general rule that "the anti-SLAPP statute's fee provision applies only to the motion to strike, and not to the entire action." 81 Cal. Rptr. 3d at 874 (internal quotation marks omitted). The district court did not abuse its discretion by awarding fees for these activities.

At the outset, the entire action against the Greene Defendants *was* subject to the motion to strike; no causes of action against them survived it. Thus, the rule Plaintiffs cite from *Christian Research* does not control the outcome here.

Further, the anti-SLAPP statute is "intended to compensate a defendant for the expense of responding to a SLAPP suit. To this end, the provision is broadly construed so as to effectuate the legislative purpose of reimbursing the

---

[26] Plaintiffs cite *Christian Research Institute v. Alnor*, 81 Cal. Rptr. 3d 866 (Ct. App. 2008) numerous times. This case does not control our analysis. In *Christian Research*, the court addressed the question of whether the district court abused its discretion by making certain reductions to the fee award. *Id.* at 873. This appeal raises a different question: whether the district court abused its discretion by *not* making reductions.

prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit." *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*, 45 Cal. Rptr. 3d 633, 637 (Ct. App. 2006) (citation omitted) (internal quotation marks omitted). Here, the Greene Defendants incurred the expenses Plaintiffs dispute in responding to a lawsuit the district court found to be baseless. Accordingly, the district court's decision to award fees other than those exclusively incurred in responding to the anti-SLAPP motion was not an abuse of discretion.

Plaintiffs base their remaining arguments on speculation and inferences. Thus, they question the credibility of the declaration the Greene Defendants filed, which states that only $15,000 was spent on work unrelated to the anti-SLAPP motion. Plaintiffs state that this number "simply cannot be true," because the BGA Defendants, who filed only a motion to dismiss, claimed $134,243.25 for that motion alone. Plaintiffs then hypothesize about how many hours the Greene Defendants' lawyers *actually* spent on work not exclusively related to the anti-SLAPP motion.

Plaintiffs also rely on speculation and inferences to contest the fee award to the extent it is based on the participation of the Howard Rice law firm (now Arnold & Porter). Plaintiffs argue that it was unnecessary for Greene to retain Howard Rice, because that firm did not provide any benefit and caused duplicative work. However, the district court directly considered this issue, and concluded that Howard Rice's participation was reasonable. The court also determined that the Greene Defendants gave a reasonable justification for hiring two firms. Namely, Greene had a long-standing relationship with Jerome Falk, the Howard Rice lawyer initially hired to work on the matter. Falk was also

"familiar with many aspects of the estate probate and administration," because he had previously defended Clainos in litigation related to the administration of the Graham estate. Additionally, Ronald Mallen, the non-Howard Rice attorney retained by Greene's insurer, "welcomed the skills that [Falk] and his firm would bring to the defense of [the instant litigation]."

We reject Plaintiffs' arguments. Even where they present a possible alternative way of viewing the evidence of the hours the attorneys claimed, they do not make the district court's view unreasonable. Accordingly, they do not show that the district court abused its discretion.

## B. Motion to Dismiss

After prevailing on their motion to dismiss, the BGA Defendants requested $177,366.75 in attorney's fees, including $43,123.50 for work on the fee petition, under 17 U.S.C. § 505. The BGA Defendants also requested $3,819.95 in costs. The district court awarded $134,243.25 in fees and all requested costs.

On appeal, we need not address Plaintiffs' specific challenges to the fee award. Because we reverse the dismissal of the copyright infringement claim, we also vacate the district court's award of attorney's fees under 17 U.S.C. § 505.

## CONCLUSION

We affirm in part, and reverse in part. We **AFFIRM** the district court's grant of the Greene Defendants' special motion to strike and also **AFFIRM** their fee award. However,

we **AFFIRM in part**, and **REVERSE in part** the district court's grant of Clainos's motion to strike. Accordingly, we **VACATE** Clainos's fee award. Further, we **AFFIRM in part**, and **REVERSE in part** the district court's grant of the BGA Defendants' motion to dismiss. We also therefore **VACATE** the BGA Defendants' fee award. The parties shall bear their own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**