# IN THE SUPREME COURT OF THE STATE OF NEVADA

DANIEL OMERZA; DARREN BRESEE;
AND STEVE CARIA,
Appellants,
vs.
FORE STARS, LTD, A NEVADA
LIMITED LIABILITY COMPANY; 180
LAND CO., LLC, A NEVADA LIMITED
LIABILITY COMPANY; AND SEVENTY
ACRES, LLC, A NEVADA LIMITED
LIABILITY COMPANY,
Respondents.

No. 76273

**FILED**

JAN 23 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER VACATING AND REMANDING*

This is an appeal from a district court order denying an anti-SLAPP special motion to dismiss in a tort action.[1] Eighth Judicial District Court, Clark County; Richard Scotti, Judge.

Appellants live in the Queensridge community and oppose residential development of adjacent land that is the site of the now-closed Badlands Golf Course. They circulated a form declaration to other Queensridge residents to sign, representing to the City of Las Vegas that the signatory purchased a residence/lot in Queensridge with the

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted.

20-03166

understanding that land designated as open space/natural drainage system in the Peccole Ranch Master Plan would remain as such and could not be developed. Respondents, the entities that own the golf course land, sued appellants, pointing to the form declaration and efforts to have other residents sign the declaration as the basis for six claims for relief. Believing the claims to be based on the exercise of their rights to petition the government and to speech (i.e., a Strategic Lawsuit Against Public Participation or "SLAPP" action), appellants filed a special motion to dismiss, which the district court denied. This appeal followed.

This court's review of an order denying an anti-SLAPP motion to dismiss is de novo. *Coker v. Sassone*, 135 Nev., Adv. Op. 2, 432 P.3d 746, 748-49 (2019). The intent of Nevada's anti-SLAPP statutes is to protect citizens' First Amendment rights to petition the government for redress of grievances and to free speech by limiting the chilling effect of civil actions that are based on the valid exercise of those rights in connection with an issue of public concern. 1997 Nev. Stat., ch. 387, at 1363-64 (preamble to bill enacting anti-SLAPP statute). Appellants argue that the district court erred in concluding that (1) the anti-SLAPP statutes do not apply to the claims alleged in the complaint; (2) appellants had not met their initial burden to establish that respondents' claims are based upon appellants' good faith communication in furtherance of their right to petition or right to free speech on an issue of public concern, and (3) respondents had met their burden to demonstrate with prima facie evidence a probability of prevailing on their claims. We consider each argument in turn.

*The district court erred in concluding that the anti-SLAPP statutes afford appellants no protection because the complaint alleges intentional torts*

The district court concluded that the anti-SLAPP statutes do not protect appellants because respondents' complaint alleges intentional

torts and fraudulent conduct. The anti-SLAPP statutes apply to "an action [that] is brought against a person based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(1); *see also* NRS 41.650 ("A person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication."). That language does not exclude any particular claim for relief from its scope because its focus is on the defendant's *activity*, not the form of the plaintiff's claims for relief. *Cf. Navellier v. Sletten*, 52 P.3d 703, 711 (Cal. 2002) (discussing California's anti-SLAPP statute that applies to an action "arising from" the defendant's protected activity and observing that "[n]othing in the statute itself categorically excludes any particular type of action from its operation, and no court has the 'power to rewrite the statute so as to make it conform to a presumed intention which is not expressed'" (quoting *Cal. Teachers Ass'n v. Governing Bd. of Rialto Unified Sch. Dist.*, 927 P.2d 1175, 177 (Cal. 1997))).[2] Thus, so long as the claim for relief is based on a good faith communication in furtherance of petitioning or free speech rights on an issue of public concern, *see* NRS 41.660(1), it is subject to the anti-SLAPP statutes.[3] As

---

[2]Based on extensive similarities between California's and Nevada's anti-SLAPP statutes, this court has "routinely look[ed] to California courts for guidance in this area." *Coker*, 135 Nev., Adv. Op. 2, 432 P.3d at 749.

[3]This court has decided a number of anti-SLAPP cases involving claims for relief other than defamation. *E.g.*, *Delucchi v. Songer*, 133 Nev. 290, 396 P.3d 826 (2017) (defamation and intentional infliction of emotional distress). Although those decisions did not directly address whether the anti-SLAPP statute could be applied to the plaintiff's claims for relief,

the California Supreme Court has explained, the definitional focus on the defendant's activity reflects legislative recognition that "all kinds of claims could achieve the objective of a SLAPP suit—to interfere with and burden the defendant's exercise of his or rights." *Navellier*, 52 P.3d at 711 (quoting *Beilenson v. Superior Court*, 52 Cal. Rptr. 2d 357, 361 (Ct. App. 1996)).[4] We thus conclude that the district court erred in determining that the anti-

---

courts have applied California's anti-SLAPP statute to various intentional tort claims, including the claims asserted by respondents in the underlying case. *See, e.g., Graham-Sult v. Clainos*, 756 F.3d 724, 739 (9th Cir. 2014) (concluding that California's anti-SLAPP statute applied to intentional and negligent misrepresentation claims that were based on defendants' protected communications).

[4]We are not persuaded by respondents' argument that the "good faith" qualifier on the activity protected by Nevada's anti-SLAPP statutes alters the definitional focus to the form of the plaintiff's claims for relief. Even with the good faith requirement, the definitional focus remains on the defendant's activity, not the form of the plaintiff's claims for relief (e.g., defamation, fraud, etc.). Respondents put the cart before the horse in arguing that the mere fact that they alleged intentional acts negates appellants' good faith. In analyzing a special motion to dismiss, the court must first look at whether the defendant established good faith and, if so, whether the plaintiff provided evidence to support its claims, as discussed below. Mere allegations of intentional conduct are not enough for a plaintiff to meet that burden. As NRS 41.660(3)(a) affords a defendant the opportunity to establish that a plaintiff's claim for relief is based on a good faith communication in furtherance of petitioning or free speech rights on an issue of public concern, the anti-SLAPP analysis necessarily looks beyond the form of the plaintiff's claims for relief. This makes sense given the purpose of the anti-SLAPP statutes' motion to dismiss provision—to provide a mechanism for the expeditious resolution of meritless SLAPPs regardless of the form the SLAPP takes. If the focus were instead on the form of the plaintiff's claims for relief, the plaintiff would be in control of the anti-SLAPP statutes' application and could circumvent the Legislature's intent to limit the chilling effect that SLAPPs have on the rights to petition and to speech by quickly resolving meritless SLAPPs.

SLAPP statutes afford appellants no protection because the complaint alleged intentional torts.

*The district court erred in concluding that appellants had not met their burden at step one of the anti-SLAPP analysis*

The showing required by the defendant at step one of the anti-SLAPP analysis has two components: (1) that the plaintiff's claims for relief are based on a "communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" and (2) that the communication was in "good faith." NRS 41.660(3)(a). The defendant satisfies the first component by showing that the plaintiff's claims for relief are based on a communication that "falls within one of the four categories enumerated in NRS 41.637," *Delucchi v. Songer*, 133 Nev. 290, 299, 396 P.3d 826, 833 (2017), and the second component by showing that the communication "is truthful or is made without knowledge of its falsehood," *Rosen v. Tarkanian*, 135 Nev., Adv. Op. 59, ___ P.3d ___, ___ (2019) (quoting NRS 41.637); *see also Shapiro v. Welt*, 133 Nev. 35, 40, 389 P.3d 262, 268 (2017) (explaining that "no communication falls within the purview of NRS 41.660 unless it is 'truthful or is made without knowledge of its falsehood'" (quoting NRS 41.637)).

*Appellants' communications fell within one or more of the categories enumerated in NRS 41.637*

Appellants established by a preponderance of the evidence that their communications fall within one or more of the categories enumerated in NRS 41.637. *See Delucchi*, 133 Nev. at 299, 396 P.3d at 833. As to appellants' activities in communicating concerns to other Queensridge residents and soliciting signatures on the form declarations, evidence in the record demonstrates that those activities fell within at least two of the categories in NRS 41.637. In particular, the communications underlying

SUPREME COURT
OF
NEVADA

(O) 1947A

those activities were (1) aimed at procuring a governmental action, result or outcome—a city council vote against any measure that would allow for residential development of the Badlands Golf Course and (2) made in direct connection with an issue under consideration (amendment of the Master Plan/General Plan affecting Peccole Ranch) by a legislative body (the city council). *See* NRS 41.637(1), (3).

As to the signed form declarations that are the focus of respondents' claims for relief, evidence in the record demonstrates that the declarations fell within all four of the categories enumerated in NRS 41.637. In addition to the same two categories noted above with respect to the activist communications (those handing out the forms and soliciting other residents to sign them), the signed form declarations also (3) communicated information (the undersigned resident's belief) to a political subdivision of the state (the city council) regarding a matter reasonably of concern to that political subdivision (plan amendments needed to allow residential development of the Badlands Golf Course), *see* NRS 41.637(2); and (4) were made in direct connection with an issue of public interest (residential development of the Badlands Golf Course) in a public forum (proceedings on a city council agenda item), *see* NRS 41.637(4). Thus, to the extent that the district court decided that the communications did not fall within any of the categories enumerated in NRS 41.637, it erred.

*Appellants met their burden of showing that the communications were truthful or made without knowledge of their falsehood*

With respect to the good-faith component of the inquiry under NRS 41.660(3)(a), the preponderance standard requires proof that it is more likely than not that the communications were truthful or made without knowledge of their falsity. Appellants met their burden of showing by a preponderance of the evidence that their communications were truthful or

made without knowledge of their falsehood (i.e., that they were "good faith" communications) through the sworn declarations attached to their special motion to dismiss, which is sufficient to satisfy the good-faith component of the step-one inquiry under NRS 41.660(3)(a).[5] *See Rosen*, 135 Nev., Adv. Op. 59, ___ P.3d at ___ (observing that "[a] determination of good faith

---

[5]To the extent that the district court focused on the existence of a genuine issue of material fact in determining that appellants did not meet their step-one burden on the good faith component, we conclude that the court erred, as the anti-SLAPP burdens and the summary-judgment burdens are substantively different. *See Delucchi*, 133 Nev. at 296, 396 P.3d at 831. Although *Coker* observed that after the 2015 statutory amendments, the anti-SLAPP "motion to dismiss again functions like a summary judgment motion procedurally," 135 Nev., Adv. Op. 2, 432 P.3d at 748, the focus in *Coker* was whether the amendments as to step two altered the appellate standard of review. Given that limited focus, *Coker* does not stand for the proposition that the preponderance burden in NRS 41.660(3)(a) is the equivalent of the burden on a party moving for summary judgment. Authority from other jurisdictions supports the discussion in *Delucchi* that the anti-SLAPP burdens and the summary-judgment burden are substantively different. *See Davis v. Cox*, 351 P.3d 862, 867 (Wash. 2015) (explaining that Washington's anti-SLAPP statute, which similarly contains a two-step process, "provides a burden of proof concerning whether the evidence crosses a certain threshold of proving a likelihood of prevailing on the claim" whereas the summary-judgment standard "does not concern degrees of likelihood or probability" but instead requires "a legal certainty"), *abrogated on other grounds by Maytown Sand & Gravel, LLC, v. Thurston Cty.*, 423 P.3d 223 (Wash. 2018), *abrogated in part by Yim v. City of Seattle*, 451 P.3d 694 (Wash. 2019). Similarly, under Nevada's anti-SLAPP statute, the court is *required* to move on to step two if the moving party (the defendant) has carried his or her burden at step one, NRS 41.660(3)(b), that by a preponderance of the evidence the claims for relief are based on protected good faith communications, NRS 41.660(3)(a). The existence of genuine issues of material fact is thus irrelevant. By contrast, genuine issues of material fact *preclude* summary judgment. Thus, at step one, the summary-judgment standard is incompatible with the burden set forth in NRS 41.660(3)(a).

requires consideration of all of the evidence submitted by the defendant in support of his or her anti-SLAPP motion," and such evidence may include a sworn statement asserting that the communications at issue were made in good faith). Thus, absent evidence that clearly and directly overcomes such declarations, the sworn declarations are sufficient for purposes of step one.

Here, the district court's order points solely to allegations in the complaint that appellants procured signatures on the form declarations and/or signed those declarations based on information that they knew to be false. The supporting documents attached to the complaint and referenced therein to support the allegations quoted by the district court are district court orders filed in *Peccole v. Peccole Nevada Corp.*, No. A-16-739654-C (Eighth Judicial District Court, Dept. 8) that, in a nutshell, concluded that the Badlands Golf Course is not subject to the Queensridge Master Declaration or the Queensridge Amended Master Declaration (i.e., the Queensridge CC&Rs); and a district court order filed in *Binion v. Fore Stars, Ltd. (Binion I)*, No. A-15-729053-B (Eighth Judicial District Court, Dept. 27) that concluded the Queensridge residents could not rely on NRS Chapter 278A to require property owner consent for a modification of the Peccole Ranch Master Plan because that chapter does not apply to common interest communities such as Queensridge.

None of those orders directly draw into doubt appellants' declarations in this case as to whether the communications in connection with procuring signatures on the form declaration and/or in signing the form declaration were in good faith. In particular, the *Peccole* and *Binion I* orders do not address the key factual statements in the form declaration: that Queensridge is located within the Peccole Ranch Master Planned Community, that the undersigned purchased a residence/lot in Queensridge

SUPREME COURT
OF
NEVADA

(O) 1947A

8

in reliance that the open space/natural drainage system in the community could not be developed under the Peccole Ranch Master Plan or the city's General Plan, and (in the version of the declaration signed by appellant Darren Bresee) that the undersigned paid a lot premium as consideration for the open space/natural drainage system. Also, in *Binion v. City of Las Vegas (Binion II)*, No. A-17-752344-J (Eighth Judicial District Court, Dept. 24), Judge Crockett observed during a hearing that purchasers of property subject to the Peccole Ranch Master Plan relied on that master plan in purchasing their homes, which provides some additional evidentiary support as to appellants' step-one burden. In sum, we conclude that the district court erred by finding that appellants had not met their burden under NRS 41.660(3)(a) to establish by a preponderance of the evidence that respondents' claims are grounded on appellants' good faith communications in furtherance of their petitioning rights on an issue of public concern. *See Rosen*, 135 Nev., Adv. Op. 59, ___ P.3d at ___ (recognizing, in the context of a defamation action, that the defendant's step one burden to establish by a "preponderance of the evidence" that the communications "were true or made without knowledge of their falsity" is a "far lower burden of proof" than applies to the plaintiff under step two, as the plaintiff must show with prima facie evidence a probability of prevailing on his or her claims, i.e., that the statements were made with knowledge that they were false).

*Respondents failed to meet their burden of demonstrating with prima facie evidence a probability of prevailing on their claims*

The probability standard in step two of the anti-SLAPP motion to dismiss analysis is higher than the standard for a traditional motion to dismiss brought under NRCP 12(b)(5); in addition to stating a legally sufficient claim, the plaintiff must demonstrate that the claim is supported by a prima facie showing of facts that, if true, would support a favorable

SUPREME COURT
OF
NEVADA

(O) 1947A

judgment. *See* NRS 41.660(3)(b). In so doing, the plaintiff must point to competent, admissible evidence. *See* NRS 41.660(3)(d) (providing that at both steps of the anti-SLAPP motion to dismiss analysis, the court must "[c]onsider such evidence, written or oral, by witnesses or affidavits, as may be material in making a determination").

Respondents did not present "prima facie evidence," as required by NRS 41.660(3)(b), to demonstrate a probability of prevailing on their claims and they instead relied on their assertion that appellants' communications were not made in good faith. Citing to the NRCP 12(b)(5) standard and finding that the appellants stated valid claims for relief, the district court concluded that it was required to deny the appellants' anti-SLAPP motion to dismiss. Thus, from the order, it appears that the district court conflated two different standards for dismissal in denying the appellants' anti-SLAPP motion to dismiss. *Compare* NRS 41.660, *with* NRCP 12(b)(5); *see HMS Capital, Inc. v. Lawyers Title Co.*, 12 Cal. Rptr. 3d 786, 791 (Ct. App. 2004) ("In opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial."); *see also De Havilland v. FX Networks, LLC*, 230 Cal. Rptr. 3d 625, 634 (Ct. App. 2018) (observing that the anti-SLAPP statutes contemplate "consideration of the substantive merits of the plaintiff's complaint, as well as all available defenses to it, including, but not limited to, constitutional defenses" (internal quotation marks omitted)); *Bikkina v. Mahadevan*, 193 Cal. Rptr. 3d 499, 511 (Ct. App. 2015) (recognizing that on the second step of the inquiry, the plaintiff must demonstrate that his or her "claims have minimal merit," which requires showing that the "complaint is both legally sufficient *and* supported by a sufficient prima facie showing of facts to sustain a favorable judgment if

SUPREME COURT
OF
NEVADA

(O) 1947A

plaintiff's evidence is credited" (internal quotation marks omitted) (emphasis added)). The district court's order did not point to any evidence that respondents submitted to support that they had a probability of prevailing on their claims, and the record contains none.

Although respondents attached six exhibits to supplemental pleadings that they filed after the hearing on appellants' anti-SLAPP special motion to dismiss, the district court did not address any of the exhibits in the challenged order. Regardless, even if the exhibits had been credited in the order, they do not provide a sufficient prima facie showing of facts to sustain a judgment in respondents' favor, and the supplemental pleadings did not explain how the exhibits satisfied respondents' burden in that regard. As general allegations supporting their six claims for relief, respondents alleged that appellants engaged in wrongful conduct through their "preparation, promulgation, solicitation and execution" of form declarations that contain "false representations of fact," and that they "knowingly and intentionally sign[ed] the knowingly false" form declarations and circulated and delivered them in an attempt to delay or deny respondents' rights to develop their property. None of respondents' exhibits, however, constitute prima facie evidence supporting that appellants' communications contain "false representations of fact" or "intentional misrepresentations," as respondents alleged, and such evidence is essential to respondents' ability to prevail on their claims.[6] We therefore conclude that the district court erred in determining that

_____

[6]Respondents' complaint asserts claims for intentional and negligent interference with prospective economic relations, conspiracy, intentional and negligent misrepresentation, and equitable and injunctive relief.

SUPREME COURT
OF
NEVADA

(O) 1947A

respondents met their step-two burden of demonstrating with prima facie evidence a probability of prevailing on their claims.

*Whether respondents are entitled to discovery relevant to opposing the special motion to dismiss is an issue the district court must address in the first instance on remand*

In opposing the anti-SLAPP motion to dismiss, respondents alternatively requested limited discovery related to their step-two burden under NRS 41.660(3)(b), but the district court did not rule on the merits of that request given its conclusion that appellants failed to meet their step-one burden. Whether respondents met the standard in NRS 41.660(4) for obtaining discovery relevant to a special motion to dismiss is a decision the district court is better situated to address, and we therefore decline to address it in the first instance in the context of this interlocutory appeal.

Accordingly, for the reasons set forth above, we vacate the portion of the district court's order denying appellants' anti-SLAPP special motion to dismiss and remand to the district court for it to determine whether respondents are entitled to discovery under NRS 41.660(4).

It is so ORDERED.[7]

_____, J.
Gibbons

_____, J.         _____, J.
Stiglich                                                Cadish

_____

[7]To the extent the parties' additional arguments are not expressly addressed in this disposition, we have considered them and conclude that they do not warrant a different outcome.

cc: Hon. Richard Scotti, District Judge
Ara H. Shirinian, Settlement Judge
Brownstein Hyatt Farber Schreck, LLP/Las Vegas
The Jimmerson Law Firm, P.C
Eighth District Court Clerk